1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF CALIFORNIA

7

8

9   Britz Fertilizers, Inc., a        1:07-cv-00846-OWW-SMS
    California corporation,
10                                      MEMORANDUM DECISION GRANTING
              Plaintiff,                IN PART AND DENYING IN PART
11                                      DEFENDANTS' MOTION TO DISMISS
    v.                                  PLAINTIFF'S FIRST AMENDED
12                                      COMPLAINT FOR DAMAGES FOR
    Bayer Corporation, an Indiana       NEGLIGENCE, GROSS NEGLIGENCE,
    corporation, and Bayer              AND BREACH OF CONTRACT (Doc.
13   CropScience, a Delaware            9)
    limited partnership,
14
              Defendants.
15

16                    I.  Introduction.

17        This cases concerns Bayer Corporation's ("Bayer Corp.) and

18   Bayer CropScience, LP's ("Bayer Science") (collectively

19   "Defendants") alleged inadequate defense of Britz Fertilizers,

20   Inc. ("Britz") in a state court lawsuit where a judgment was

21   entered against Britz for over seven million dollars.  Before the

22   court for decision is Defendants' motion to dismiss ("Motion")

23   Britz's First Amended Complaint for Damages for Negligence, Gross

24   Negligence, and Breach of Contract ("FAC").  Defendants move to

25   dismiss Britz's FAC on the following grounds: Britz's FAC is

26   duplicative of a previously filed complaint in this Court, the

27   allegations in the FAC are contrary to documents subject to

28   judicial notice, Britz cannot recover on its negligence and gross

    negligence claims for relief because the claims are for negligent

performance of a contract and are not independent of the
contract, and Britz cannot recover for breach of contract because
the FAC does not allege a breach of the contract's terms.

## II.  Background.

### A.  Procedural Background.

Britz filed a Complaint for Damages for Negligence, Gross
Negligence, and Negligent Supervision against Defendants on June
8, 2007 (hereinafter "*Britz II*").  Ten days later, on June 18,
2007, Britz filed its FAC for damages for negligence, gross
negligence, and breach of contract.  Britz invokes the court's
diversity of citizenship jurisdiction under 28 U.S.C. § 1332.
Britz alleges the amount in controversy exceeds $75,000,
exclusive of interest and costs.  Britz is a California
corporation with its principal place of business located in
Fresno, California.  Defendant Bayer Corp. is an Indiana
corporation with its principal place of business located in
Pittsburgh, Pennsylvania.  Defendant Bayer Science is a Delaware
limited partnership with its principal place of business in
Research Triangle Park, North Carolina.  The partners of Bayer
Science are entities that are citizens of Delaware, Indiana, and
Germany.  Britz alleges Bayer Corp. controlled Bayer Science and
was responsible for its actions or inaction.[1]  FAC ¶ 7.

On July 17, 2007, Defendants filed this Motion.  Britz
opposes Defendants' Motion.  On July 25, 2007, District Judge
Anthony W. Ishii signed an order reassigning this case (*Britz II*)

---

[1] In the FAC, Britz jointly refers to Bayer Corp. and Bayer
Science as "Defendant" or as "Bayer."  The terms are also used
interchangeably in this Order.

2

1  to this court because of a currently pending lower-numbered

2  related case captioned *Britz Fertilizers, Inc., v. Bayer*

3  *Corporation, et al.*, 1:06-cv-00287-OWW-SMS (hereinafter *"Britz*

4  *I"*).

5      B.   <u>Factual Background</u>.

6          1.   <u>*Britz II*</u>.

7      Defendants manufacture agricultural chemical products.  FAC

8  ¶ 10.  Britz was a distributor of Defendants' agricultural

9  products in central California.  FAC ¶ 11.  As a distributor,

10 Britz was one of Defendants' largest accounts generating between

11 $20 and $25 million in annual sales for Defendants.  FAC ¶ 11.

12 One of the products Defendants manufactured was an agricultural

13 chemical product known as "Ethrel."  FAC ¶ 12.

14      In 2002, Britz purchased Defendants' Ethrel.  FAC ¶ 13.

15 Britz sold the Defendants' Ethrel to an individual named Ahmad

16 Skouti ("Skouti"), who was a grape grower in Fresno and Madera

17 Counties.  FAC ¶ 13.  Britz alleges that in July 2002, Skouti

18 applied Defendants' Ethrel to certain vineyards he owned in

19 Fresno and Madera Counties, and to a vineyard in Fresno County

20 that he leased from Walter Johnsen ("Johnsen").  FAC ¶ 14.

21 Skouti's vineyards sustained damage after the application of

22 Defendants' Ethrel to the vineyards; Britz alleges this damage

23 was not through its fault or negligence.  FAC ¶ 15.

24      In September 2002, after becoming aware of the damage to

25 Skouti's vineyards, Britz promptly notified Defendants of the

26 damage.  FAC ¶ 16.  On September 10, 2002, William Ferguson

27 ("Ferguson"), Defendants' vice president and assistant general

28 counsel, acting as an agent or representative of the Defendants,

represented to Britz, in writing, that in the event a claim arose out of the application of Defendants' Ethrel to Skouti's vineyards "it would be Bayer's position that it would defend and indemnify [Plaintiff against] any claim related to [Defendant's] product in a situation where the [D]istributor acted as a purely 'pass through' entity." FAC ¶¶ 17-18.  Ferguson had been managing product liability litigation for Bayer since approximately 1988 and had significant experience in this area. FAC ¶ 18.

On December 18, 2002, Skouti and Johnsen filed a lawsuit against Britz in Fresno County Superior Court for damages sustained as a result of the application of Defendant's Ethrel to Skouti's vineyards ("Skouti Lawsuit").  FAC ¶ 19.  Britz's insurance carrier retained Theodore Hoppe ("Hoppe") to represent Britz in the Skouti Lawsuit.  FAC ¶ 20.  On March 7, 2003, Britz filed a cross-complaint against Defendants for declaratory relief and indemnification in the Skouti Lawsuit.  FAC ¶ 22.

On January 16, 2003, Britz requested that Defendants defend and indemnify Britz in the Skouti Lawsuit.  FAC ¶ 21.  On May 14, 2003, James Moore ("Moore") of the law firm Baker & Hostetler LLP, as the agent or representative and on behalf of Defendants, agreed in writing that Defendants would defend Britz in connection with the Skouti Lawsuit.  FAC ¶ 23.  Moore's May 14, 2003, correspondence is addressed to Hoppe and reads:

> Re:  No. 02-CECG04540; *Ahmad Skouti and Walter Johnsen v. Britz Fertilizers, Inc., et al*; In the Superior Court of California, County of Fresno.

Dear Mr. Hoppe:

1          This is in response to your letter dated January 16,
2     2003, concerning the above-referenced matter.  Bayer has
      asked me to respond to the letter.

3          You have provided to Bayer CropScience ("Bayer") a
      copy of a complaint that does not mention Bayer or any
4     Bayer product.   The complaint alleges, among other
      things, that Britz Fertilizers, Inc. ("Britz") acted as
5     a consultant for the plaintiff and performed negligently
      in this capacity.   The information provided to Bayer
6     indicates that Bayer has no duty to defend or indemnify
      Britz Fertilizers in this case.

7          However, because of Bayer's relationship with Britz,
8     Bayer agrees to defend Britz Fertilizers, Inc. at this
      time.  Bayer will not pay past attorneys fees or costs in
9     this case.  Bayer will retain Jim Rushford of Rushford &
      Bonotto in Sacramento, to defend this matter with you.
10    If there is any evidence in this case of negligence or
      fault on the part of Britz (whether credible or not),
11    Bayer may at its option withdraw from the defense of this
      case.   In the event that Bayer withdraws from the case,
12    Britz agrees to waive any conflict and allow attorneys
      retained by Bayer in this manner to continue to represent
13    Bayer if Bayer is included as a party.

14         Britz agrees that it will cooperate fully with Bayer
      in connection with the defense of this case.  Both Bayer
15    and Britz reserve the issue of indemnity until a later
      date.
16
           Please sign below to indicate acceptance of Britz
17    Fertilizers, Inc. to this letter agreement.

18         Please let me know if you have any questions.

19                        Very truly yours,

20                        [Signature of James L. Moore]

21                        James L. Moore
                          Of Baker & Hostetler
22

23    FAC, Exhibit A.  Britz alleges Moore was employed and acting as

24    Defendants' outside legal counsel for all litigation claims in

25    connection with Defendants' agricultural chemicals.  FAC ¶ 24.

26    Britz further alleges Moore had been Defendants' outside counsel

27    since 1993 and had significant experience representing Defendants

28    in crop damage lawsuits.  FAC ¶ 24.  Moore's primary

                                   5

1   responsibilities included securing, employing, supervising, and
2   managing local trial counsel retained to represent and defend
3   Defendants in litigation involving Defendants' products.  FAC ¶
4   24.

5       Britz believed that Defendants agreed to Defend Britz in the
6   Skouti lawsuit because Britz was one of Defendants' largest
7   accounts, and Defendants did not want to lose or damage the
8   business relationship with Britz.  FAC ¶ 25.  Defendants agreed
9   to and did pay for Hoppe's subsequent legal services in the
10  Skouti Lawsuit.  FAC ¶ 26.  Defendants also retained and paid for
11  the legal services of James Rushford ("Rushford") of Rushford &
12  Bonotto LLP to act as co-counsel to defend Britz in the Skouti
13  Lawsuit.  FAC ¶ 26.  On June 3, 2003, Britz dismissed its cross-
14  complaint against the Defendants in reliance on Defendants'
15  agreement to defend Britz in the Skouti Lawsuit.  FAC ¶ 27.  On
16  June 18, 2003, Rushford became co-counsel of record for Britz.
17  FAC ¶ 26.  Beginning June 18, 2003, and continuing through
18  November 22, 2004, Rushford represented Britz in the Skouti
19  Lawsuit.  FAC ¶ 28.

20      Britz alleges that Rushford, while representing Britz in the
21  Skouti Lawsuit, was acting as counsel for Defendants without
22  Britz's knowledge or consent.  FAC ¶ 29.  While acting as co-
23  counsel to Britz, Rushford continuously reported the status of
24  the litigation and the substance of privileged attorney-client or
25  work-product information between Hoppe and himself to Moore and
26  Ferguson.  FAC ¶ 30.  Moore reported his communications with
27  Rushford to Ferguson.  FAC ¶ 31.  Ferguson, in his capacity as
28  Defendants' vice president and assistant general counsel, was

1   responsible for the overall management of Britz's defense in the
2   Skouti lawsuit.  FAC ¶ 31.

3       While Rushford was representing Britz, he concluded Hoppe
4   was not properly defending Britz in the Skouti Lawsuit and
5   repeatedly communicated this information to Moore or Ferguson, or
6   both.  FAC ¶ 32.  Rushford failed to take any measures to correct
7   or mitigate Hoppe's acts or omissions to ensure Britz received a
8   proper defense.  FAC ¶ 33.  Rushford also failed to communicate
9   to Britz the propriety of Hoppe's representation of Britz.  FAC ¶
10  33.  Britz believed in good faith that it was being properly
11  defended in the Skouti Lawsuit under the supervision of Bayer.
12  FAC ¶ 33.  Although Defendants, Moore, and Ferguson were aware of
13  Rushford's conclusion that Hoppe was not competently defending
14  Britz, they failed to take any measures to ensure Britz received
15  a proper defense.  FAC ¶ 34.  Defendants, Moore, and Ferguson
16  also failed to communicate to Britz any of Rushford's conclusions
17  regarding the inadequacy of Britz's defense in the Skouti
18  Lawsuit, so Britz could have taken corrective measures.  FAC ¶
19  34.

20      On November 22, 2004, Rushford withdrew as counsel for Britz
21  in the Skouti Lawsuit without Britz's consent.  FAC ¶ 35.  Britz
22  alleges Rushford represented Defendants regarding Skouti's claims
23  after he withdrew as Britz's counsel and without Britz's consent.
24  FAC ¶ 35.

25      Based on these facts, Britz asserts three claims for relief.
26  The first claim for relief is for negligence.  Britz asserts
27  Defendants agreed to defend Britz in the Skouti Lawsuit, and
28  therefore undertook a duty to exercise reasonable care in

7

managing Britz's defense.  According to Britz, Defendants breached their duty to exercise care in managing Britz's defense in the Skouti Lawsuit by failing to take measures to ensure Britz received a proper defense.   Britz also asserts Defendants failed to properly manage Britz's defense and to inform it of Rushford's dual agency (and conflict), which resulted in a judgment in the Skouti Lawsuit against Britz in the amount of $7,596,247 plus costs, which is the legal cause of Britz's injuries.  Britz's second claim for relief is for gross negligence.  In its claim for gross negligence, Britz asserts that Defendants failed to act with any modicum of diligence or care, and Defendants' actions constituted a wanton and reckless disregard of its obligations to Britz.  Britz also seeks exemplary and punitive damages for its gross negligence claim.  Britz's third and final claim for relief is for breach of contract.  Britz asserts Defendants' express agreement to defend Britz in the Skouti Lawsuit contained a necessary and implied condition to adequately defend Britz. According to Britz, Defendants breached their agreement to adequately defend Britz by failing to take measures to ensure Britz received an adequate defense, and by failing to inform Britz of the facts or circumstances indicating Britz was not being adequately defended as Rushford had indicated to Moore and Ferguson.  Throughout the Skouti Lawsuit, Britz relied on Defendants' agreement to adequately defend Britz.  Britz alleges it did not become aware of Defendants' breach of its obligations until after June 10, 2005, when the $7,596,247 judgment was entered against Britz.

1          **2.   *Britz I*.**

2          The following is an overview of the allegations in *Britz I*
3     that are not otherwise set forth in *Britz II*.  In January 2002,
4     Britz and Bayer Corp. entered into a distributorship agreement
5     ("Distribution Agreement") that entitled Britz to distribute
6     itemized formulations of Bayer Products.  *Britz I* Compl. ¶ 7.
7     Britz agreed to use its best efforts in selling Bayer Products.
8     *Britz I* Compl. ¶ 9.  One of the terms and conditions in the
9     Distribution Agreement required Britz to promptly investigate and
10    report to Bayer Corp. all customer complaints concerning the use
11    and application of Bayer Products and to cooperate with Bayer
12    Corp. in handling claims.  *Britz I* Compl. ¶ 10.  An additional
13    term and condition in the Distribution Agreement required Bayer
14    Corp. to indemnify Britz against all claims for property damage
15    or personal injury to third parties, whether arising in warranty,
16    negligence, or otherwise, with certain exceptions, caused by
17    goods supplied to Britz by Bayer Corp. under the Distribution
18    Agreement.  *Britz I* Compl. ¶ 11.

19         Britz seeks the following relief in *Britz I*: damages in the
20    amount of $7,596,247, plus costs and interest, under express
21    indemnity, implied contractual indemnity, and implied equitable
22    indemnity theories; an unspecified amount in damages, including
23    punitive damages, for fraud and false promise; unspecified
24    damages for negligent misrepresentation; and declaratory relief.
25    Britz also seeks attorney's fees.

26         Britz filed the complaint that initiated *Britz I* on March
27    14, 2006.  On August 30, 2006, a scheduling conference order was
28    entered setting the discovery cutoff date as June 29, 2007, a

                                   **9**

settlement conference date on July 12, 2007, the non-dispositive motions deadline on July 16, 2007, a dispositive motions deadline on July 30, 2007, a pre-trial conference date on September 24, 2007, and the trial date for October 30, 2007.[2]  On May 24, 2007, and upon the parties' request, Magistrate Judge Snyder extended the discovery cutoff date to July 30, 2007.  On June 7, 2007, and upon the parties' request, the pre-trial motions schedule was modified requiring non-dispositive motions to be filed by August 12, 2007, and all dispositive motions to be filed by August 27, 2007.  On July 10, 2007, the parties filed a joint request for a new scheduling order.[3]  By minute order dated August 1, 2007, the following dates were set.  The discovery cutoff date is December 21, 2007.  Non-dispositive motions are due January 4, 2008. Dispositive motions are due January 14, 2008.  The final pretrial conference is set for March 17, 2008.  A jury trial is set to begin on May 6, 2008.

### III.  Legal Standard.

Federal Rule of Civil Procedure 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  The question before the court is not whether the plaintiff will ultimately prevail, rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief.  *See*

---

[2] The parties did not anticipate filing any amendments to the pleadings as of August 30, 2006.  (Doc. 12) Sched. Conf. Order at p. 3, lns. 25-26.

[3] The parties filed this request prior to Defendants' filing of this Motion.

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

IV. <u>Defendants' Request for Judicial Notice</u>.

Defendants request the court to take judicial notice of several documents that were filed in *Britz I* under Federal Rule of Evidence ("FRE") 201.  These documents are attached to the declaration of Defendants' counsel in support of Defendants' Motion and include copies of the Joint Scheduling Conference Statement, Britz's Opposition to Defendants' Motion to Compel Answers Posed at Deposition, the Declaration of Robert Glassman (Britz's chief financial officer) in Opposition to Defendants' Motion to Compel Answers Posed at Deposition, the Declaration of Theodore W. Hoppe in Opposition to Defendants' Motion to Compel Answers Posed at Deposition, and the Declaration of Roger Schrimp (Britz's current counsel) in Opposition to Defendants' Motion to Compel Answers Posed at Deposition.

11

1    Defendants also request the court to take judicial notice of
2   a letter from Mr. Hoppe to Mr. Moore dated May 27, 2003,
3   indicating Britz agrees to Defendants' proposal in Moore's May
4   14, 2003, letter.   Britz does not object to Defendants' request
5   for judicial notice.

6    "A judicially noticed fact must be one not subject to
7   reasonable dispute in that it is either (1) generally known
8   within the territorial jurisdiction of the trial court or
9   (2) capable of accurate and ready determination by resort to
10  sources whose accuracy cannot reasonably be questioned."   Fed. R.
11  Evid. 201(b).   "A court shall take judicial notice if requested
12  by a party and supplied with the necessary information."   Fed. R.
13  Evid. 201(d).   Judicially noticed facts often consist of matters
14  of public record, such as prior court proceedings, *see, e.g.,*
15  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

16    In reviewing a Rule 12(b)(6) motion, a court must accept as
17  true all material allegations in the complaint, as well as
18  reasonable inferences to be drawn from them.   *Pareto v. Federal*
19  *Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).   A court
20  may consider facts subject to judicial notice outside the
21  pleadings in a motion to dismiss.   *Mullis v. United States Bankr.*
22  *Court for the Dist. of Nevada*, 828 F.2d 1385 (9th Cir. 1987)
23  (citing *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279,
24  1282 (9th Cir. 1986)).

25    Each document that Defendants' request the court to take
26  judicial notice of is a part of the court record in *Britz I*,
27  except for the May 27, 2003, Hoppe Letter.   These documents are
28  the proper subject of judicial notice under FRE 201(b) and

1  *Emrich*, 846 F.2d at 1198.  The Hoppe Letter, which is Britz's

2  acceptance of Defendants' offer to pay Britz's attorney's fees

3  and to provide Rushford as counsel in the Skouti Lawsuit, is

4  central to Britz's claims for breach of contract, negligence, and

5  gross negligence.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706

6  (9th Cir. 1998) (holding that "a district court ruling on a

7  motion to dismiss may consider a document the authenticity of

8  which is not contested, and upon which the plaintiff's complaint

9  necessarily relies.").  The Hoppe Letter is also the proper

10 subject of judicial notice under FRE 201(b) as its existence is

11 not reasonably subject to dispute.

12      Defendants' request for judicial notice of the documents

13 attached to the declaration of T. Mark Smith is GRANTED.

14                          V.  Discussion.

15      A.    Whether Britz's FAC States a Claim for Relief for
             Negligence and Gross Negligence.

16

17      Defendants contend a party may not recover in tort for

18 breach of a contractual obligation (tortious breach of contract).

19 Defendants maintain each of the causes of action in *Britz II* are

20 based on the May 14, 2003, letter from Moore to Hoppe, a contract

21 between the parties.  Defendants argue Britz does not allege

22 Defendants have any duties independent of the May 14, 2003,

23 letter, and Britz has only pleaded negligent performance of a

24 contract.

25      Britz contends its negligence and gross negligence claims

26 arise from Defendants' duty to exercise reasonable care in

27 furnishing a defense to Britz, including a duty to inform Britz

28 of material facts or circumstances which became known to

                               13

1  Defendants during its defense.  Britz also contends that
2  Defendants' agreement to defend Britz crated a special
3  relationship between Britz and Defendants that is analogous to
4  the relationship between an insurer and an insured.

5       "The distinction between tort and contract is well-grounded
6  in common law, and divergent objectives underlie the remedies
7  created in the two areas." *Erlich v. Menezes*, 21 Cal. 4th 543,
8  550 (1999).  "Whereas contract actions are created to enforce the
9  intentions of the parties to the agreement, tort law is primarily
10 designed to vindicate social policy." *Id.* at 550-51.  "While the
11 purposes behind contract and tort law are distinct, the boundary
12 line between them is not[,] and the distinction between the
13 remedies for each is not found ready made." *Id.* (citations and
14 internal quotations omitted).  The California Supreme Court has
15 commented that the distinction "arises from the nebulous and
16 troublesome margin between tort and contract law." *Aas v.*
17 *Superior Court*, 24 Cal. 4th 627, 635 (2000).

18      A trio of California Supreme Court cases address whether
19 Britz can state a claim against Defendants for negligence and
20 gross negligence arising out of the May 14, 2003, letter. *See,*
21 *e.g., Aas v. Superior Court*, 24 Cal. 4th 627 (2000); *Erlich v.*
22 *Menezes*, 21 Cal. 4th 543 (1999); and *Freeman & Mills, Inc. v.*
23 *Belcher Oil Co.*, 11 Cal. 4th 85 (1995).  "A person may not
24 ordinarily recover in tort for the breach of duties that merely
25 restate contractual obligations." *Aas*, 24 Cal. at 643.
26 "[C]ourts will generally enforce the breach of a contractual
27 promise through contract law, except when the actions that
28 constitute the breach violate a social policy that merits the

                                    **14**

1  imposition of tort remedies." *Id.*  (citing *Menezes*, 21 Cal. 4th

2  at 552 (1999)).

3      In *Menezes*, the California Supreme Court was faced with the

4  issue of whether a homeowner could recover emotional distress

5  damages against a homebuilder for shoddy construction work.  The

6  facts of *Menezes* are straight forward.  The homeowners contracted

7  with the homebuilder, a licensed general contractor, to build a

8  "dreamhouse" on their ocean-view lot.  *Menezes*, 21 Cal. 4th at

9  548. The rains came and the nightmares began shortly after the

10  homeowners moved into their new home.  *Id.*

11      The house leaked from every conceivable location.  Walls
        were saturated in an upstairs bedroom, two bedrooms
12      downstairs, and the pool room.  Nearly every window in
        the house leaked.  The living room floor filled with
13      three inches of standing water.  In several locations
        water poured in . . . streams from the ceilings and
14      walls.  The ceiling in the garage became so saturated .
        . . the plaster liquified and fell in chunks to the
15      floor.

16  *Id.* (alterations in original omitted).  The homebuilder's

17  attempts to stop the leaks proved ineffectual.  *Id.*  The

18  homeowners eventually had another general contractor and

19  structural engineer inspect their home.  *Id.*  This inspection

20  revealed substantial defects in the workmanship of the house.  In

21  addition to confirming defects in the roof, windows, and

22  waterproofing, the inspection revealed none of the load-bearing

23  walls were properly installed, turrets on the roof were

24  inadequately connected to the roof beams and had begun to

25  collapse, other parts of the roof framing were improperly

26  constructed, and three decks were in danger of catastrophic

27  collapse.  *Id.* at 549.  The homeowners sought recovery against

28  the homebuilder on several theories including breach of contract,

15

1  fraud, negligent misrepresentation, and negligent construction.
2  *Id.*

3       At trial, the homeowners testified that they suffered
4  emotional distress as a result of the defective condition of the
5  house and the homebuilder's invasive and ineffectual repairs.
6  *Menezes*, 21 Cal. 4th at 549.  One of the homeowners felt
7  "absolutely sick" and had to be removed by an ambulance after
8  learning of the full extent of the structural problems.  *Id.*  The
9  jury found the homebuilder breached his contract with the
10 homeowners by negligently constructing their home and awarded the
11 homeowners $406,700 as the cost of repairs.  *Id.*  Each homeowner
12 was awarded $50,000 for emotional distress.  *Id.*

13      The court of appeal affirmed the judgment, including the
14 emotional distress awards, noting that the breach of a
15 contractual duty may support an action in tort.  *Id.* at 550.  The
16 supreme court reversed holding that emotional distress damages
17 are not available in breach of contract and negligent
18 construction cases, disagreeing with the court of appeals'
19 reliance on the proposition that a contractual obligation may
20 create a legal duty and the breach of that duty may support an
21 action in tort.  *Id.*  Recognizing this proposition is true, the
22 court stated, "however, conduct amounting to a breach of contract
23 only becomes tortious when it also violates a duty independent of
24 the contract arising from principles of tort law."  *Id.*  The
25 supreme court reviewed several cases and concluded that in each
26 case "the duty that gives rise to tort liability is either
27 completely independent of the contract or arises from conduct
28 that is both intentional and intended to harm."  *Id.*

1   *Aas* is also a construction defect case.  In *Aas*, the
2   homeowners alleged that their dwellings suffered a variety of
3   construction defects affecting virtually all components and
4   aspects of construction.  *Aas*, 24 Cal. 4th at 633.  Based on
5   these defects, the plaintiffs asserted causes of action for
6   negligence, strict liability, breach of implied warranty, breach
7   of express warranty, and breach of contract.  *Id.*  The plaintiffs
8   sought damages for the cost of repairing the alleged defects and
9   for damages representing the diminution in value of their
10  residences.  *Id.*  Before the trial began, the defendants moved
11  for orders in limine seeking to exclude evidence of the alleged
12  construction defects that had not caused property damage.  *Id.*
13  The trial court granted the defendants' motions as to the
14  homeowners' tort claims only.  *Id.* at 633-34.  The homeowners
15  sought a writ of mandate, which the court of appeal denied, and
16  the California Supreme Court granted review of that decision.
17  *Id.* at 634.

18      The question in *Aas* was whether the homeowners could
19  "recover in negligence from the entities that built their homes a
20  money judgment representing the cost to repair, or the diminished
21  value attributable to, construction defects that have not caused
22  property damage."  *Aas*, 24 Cal. 4th at 635.  The *Aas* homeowners
23  relied on *North Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th
24  764, 777 (1997) for the proposition that "a contract to perform
25  services gives rise to a duty of care which requires that such
26  services be performed in a competent and reasonable manner[,] and
27  that a negligent failure to do so may be both a breach of
28  contract and a tort."  *Aas*, 24 Cal. 4th at 643.  The homeowners

17

1  argued the defendant's "negligent breach of contractual duties

2  owed directly to [the homeowners] to deliver homes in compliance

3  with the applicable building codes is a tort, for which [they]

4  may recover the amount which will compensate for all the

5  detriment proximately caused thereby." *Id.*  The supreme court

6  found the homeowners' argument unpersuasive in light of *Menezes*

7  and *Belcher Oil*.

8      A person may not ordinarily recover in tort for the
        breach of duties that merely restate contractual
9      obligations.  Instead, courts will generally enforce the
        breach of a contractual promise through contract law,
10     except when the actions that constitute the breach
        violate a social policy that merits the imposition of
11     tort remedies.

12 *Id.* (internal quotations and alterations in original omitted).

13 The supreme court had "recently rejected the argument that the

14 negligent performance of a construction contract, without more,

15 justifies an award of tort damages" in *Menezes*.  *Id.*  The court

16 emphasized its *Menezes* finding where it "reiterated that conduct

17 amounting to a breach of contract becomes tortious when it also

18 violates a duty independent of the contract arising from

19 principles of tort law."  *Id.*  The supreme court affirmed the

20 court of appeals' denial of the homeowners' petition for writ of

21 mandate to require admission of evidence of construction defects

22 that did not cause damage.  *Id.* at 653.

23      Britz argues that its breach of contract claim arises out of

24 Defendants' breach of its promise to defend Britz in the Skouti

25 lawsuit.  The negligence and gross negligence claims, Britz

26 argues, arise from a duty to exercise reasonable care in

27 providing a competent defense with competent counsel and a duty

28 to inform Britz of material facts or circumstances Defendants

18

1  became aware of in the course of defending Britz.

2      Britz's arguments ignore the California Supreme Court's
3  opinions in *Menezes* and *Aas*.  Like the homeowners in *Aas*, Britz
4  relies on the language in the court of appeals' decision in *North*
5  *American Chemical Company*, a case pre-dating *Menezes* and *Aas*, that
6  held where the contract is one for services, the contract gives
7  rise to an implied duty of care which requires that such services
8  be performed in a reasonable manner, and that a negligent failure
9  to do so may be both a breach of contract and a tort.  The
10 *Menezes* court noted that this statement was true, but
11 unequivocally qualified that, "conduct amounting to a breach of
12 contract becomes tortious *only when it also violates a duty*
13 *independent of the contract arising from principles of tort law.*"
14 *Menezes*, 21 Cal. 4th at 551 (citing *Applied Equip. Corp. v.*
15 *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994).  The
16 contract was one for services, a competent performance of such
17 services was a contractual duty.

18      Here, Britz does not allege that Defendants had a duty to
19 defend independent of the May 14, 2003, letter whereby Defendants
20 undertook to provide Britz a defense in the Skouti Lawsuit.
21 Britz's negligence allegations that Defendants undertook a duty
22 to exercise reasonable care in managing Britz's defense and
23 should have informed Britz of Rushford's communications with
24 Moore and Ferguson that Hoppe was inadequately representing
25 Britz, premised on the May 14, 2003, letter by which Defendants
26 undertook Britz's defense, was an integral part of and not
27 independent of Bayer's defense obligation.

28      Britz admits that Defendants agreed to defend Britz in the

19

Skouti Lawsuit because of their prior business relationship.  It is this prior business relationship that resulted in the Defendants' offer to defend Britz in the Skouti Lawsuit, not an independent duty arising under tort law.  Defendants' failure to inform Britz of Rushford's conclusion that Hoppe was not providing Britz with an adequate defense in the Skouti Lawsuit is part of defense counsel's duty to keep a client informed when representing a client as part of a defense tender and does not implicate any social policy that merits the imposition of tort remedies.

Britz contends that Defendants' argument that a party may not recover in tort for breach of a contractual obligation ignores well-established case law.  In support of this position, Britz cites the venerable California Supreme Court decision in *Eads v. Marks*, 39 Cal. 2d 807 (1952) for the proposition that "the same act may be both a tort and breach of contract."

In *Eads*, a father had entered into an agreement with a dairy for the delivery of milk, cream, butter, and eggs to his residence.  *Eads*, 39 Cal. 2d at 809.  About a year after entering into the delivery agreement, the parents of the plaintiff, a one-year old child, informed the dairy that it should not leave glass containers, among other things, at the residence other than in the refrigerator.  *Id.*  The plaintiff's parents informed the dairy that the child might become injured by picking up, dropping, or tripping over the dairy products or glass containers.  *Id.*  About nine months later, the dairy left a glass milk container on the back porch of the residence.  *Id.*  The child picked up the glass container and fell off the porch

1    causing the container to break near his face.  *Id.*  The child

2    sustained severe injuries in the fall.  *Id.*

3         Plaintiffs sued the dairy for negligence.  In the complaint,

4    the plaintiffs alleged they made an agreement with the dairy

5    regarding the place of delivered dairy products and, implicit in

6    the agreement, is the allegation that it was made expressly for

7    the benefit of their minor child, a third-party beneficiary.

8    *Eads*, 39 Cal. 2d at 810.  Defendants demurred on the ground that

9    the complaint was uncertain because it alleged no facts showing

10   any duty was owed to the child.  *Id.*  The trial court sustained

11   the demurrer without leave to amend.

12        On appeal, the court reversed holding that the same act may

13   be both a tort and a breach of contract.  *Id.*  The court reasoned

14   "[e]ven where there is a contractual relationship, between the

15   parties, a cause of action in tort may sometimes arise out of the

16   negligent manner in which the contractual duty is performed, or

17   out of a failure to perform such duty."  *Id.*  According to *Eads*,

18   the duty of care arose by reason of the contract.  *Id.* at 811.

19   "The contract is of significance only in creating the legal duty,

20   and the negligence of the defendant should not be considered as a

21   breach of contract, but as a tort governed by the rule of torts."

22   *Id.*

23        Britz's reliance on *Eads* is misplaced.  *Eads* has been

24   refuted by later California case law that establishes the

25   independent duty requirement.  In *Eads*, although the agreement to

26   deliver dairy products, with all deliveries to be placed in the

27   refrigerator, was between the injured child's parents and the

28   dairy, the duty underlying the negligence cause of action was to

21

1  the injured child, who was not a party to the contract.

2  Characterizing the independent duty of care in *Eads* as applying

3  to the child is consistent with *Menezes* and *Aas*.   Here, by

4  contrast, Britz maintains the Defendants owed it a duty of care

5  arising out of the May 14, 2003, letter.   In *Eads*, it was the

6  injured young child who was a not a party to the agreement for

7  the delivery of dairy products to whom a duty was owed, in

8  contrast to the case at hand where Britz, a party to the May 14,

9  2003, letter, was injured by a breach of the very duty of defense

10 the contract provides.

11        Britz contends Defendants' agreement to defend it in the

12 Skouti Lawsuit created a "special relationship" that is analogous

13 to the relationship shared between an insurer and an insured.

14 This special relationship, according to Britz, creates a duty of

15 care independent of the contract and arising from principles of

16 tort law.   Defendants rejoin no "special relationship" existed

17 between the parties.   Instead, Defendants suggest that the May

18 14, 2003, letter was simply an offer to pay Britz's attorney's

19 fees associated with its defense in the Skouti Lawsuit to keep a

20 commercial customer happy.   Defendants also assert Britz's

21 interpretation of the May 14, 2003, letter implies that

22 Defendants agreed to assume control over the litigation in the

23 Skouti Lawsuit.   Defendants deny any insurance contract-type duty

24 of defense by their undertaking to provide counsel.   The facts

25 allege that Britz was an agricultural chemical dealer to whom

26 Bayer was a commercial product supplier.   There is no "special"

27 insurance-like relationship in the providing of a defense to a

28 customer and to defend the manufacturer-seller's product.

1    "Every contract imposes upon each party a duty of good faith

2  and fair dealing in its performance and enforcement." *Foley v.*

3  *Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988).  The

4  covenant, however, is a contract term and "compensation for its

5  breach has almost always been limited to contract rather than

6  tort remedies." *Id.* at 684.  "As to the scope of the covenant,

7  the precise nature and extent of the duty imposed by such an

8  implied promise will depend on the contractual purposes." *Id.*

9  (alterations in original omitted).  "As a contract concept,

10 breach of the duty led to imposition of contract damages

11 determined by the nature of the breach and standard contract

12 principles." *Id.*

13     An exception to this general rule exists in the context of

14 insurance contracts, "where, for a variety of reasons, courts

15 have held that breach of the implied covenant will provide the

16 basis for an action in tort." *Foley*, 47 Cal. 3d at 684.  In the

17 insurance context

18         the duty to comport with the implied covenant of good
         faith and fair dealing is immanent in the contract
19         whether the company is attending on the insured's behalf
         to the claims of third persons against the insured or the
20         claims of the insured itself.  Accordingly, when the
         insurer unreasonably and in bad faith withholds payment
21         of the claim of its insured, it is subject to liability
         in tort.
22

23 *Id.* (alterations in original omitted).

24     Tort recovery is permitted in the insurance context because

25 of circumstances that do not exist in typical commercial

26 contracts.  An insured in an insurance contract "does not seek to

27 obtain a commercial advantage by purchasing the policy – rather,

28 he seeks protection against the calamity." *Id.* (citing *Egan v.*

1  *Mutual of Omaha Ins. Co.*, 24 Cal. 3d. 809, 819 (1979)).  "The
2  insurers' obligations are rooted in their status as purveyors of
3  a vital service labeled quasi-public in nature."  *Foley*, 47 Cal.
4  3d at 684-85 (alterations in original omitted).  "Suppliers of
5  services affected with a public interest must take the public's
6  interest seriously, where necessary placing it before their
7  interests in maximizing gains and limiting disbursements."  *Id.*
8  at 685.  "As a supplier of a public service rather than a
9  manufactured product, the obligations of insurers go beyond
10 meeting reasonable expectations of coverage."  *Id.*  Additionally,
11 "the relationship of insurer and insured is inherently
12 unbalanced: the adhesive nature of insurance contracts places the
13 insurer in a superior bargaining position."  *Id.*

14      Britz and the Defendants do not share the "special
15 relationship" that exists between an insured and insurer.  The
16 relationship between Britz and Defendants is a commercial one,
17 that of a purchaser and seller in the commercial context of
18 agricultural chemical sales.  Defendants' offer to defend Britz
19 in the Skouti Lawsuit arises out of their commercial
20 relationship, and the May 14, 2003, letter specifically indicates
21 Defendants would defend Britz "because of Bayer's relationship
22 with Britz."  Britz has not cited any cases extending the
23 "special relationship" status to commercial dealings between
24 parties outside of the insurance context.  Defendants are in the
25 business of manufacturing and selling agricultural chemical
26 products.  Defendants do not provide a catastrophe avoidance
27 service to the public or peace of mind to customers in the way an
28 insurance company does.  Defendants do not hold a superior

1   bargaining position over Britz, and there is nothing adhesive

2   about Defendants' May 14, 2003, letter voluntarily offering to

3   defend Britz in the Skouti Lawsuit.  Defendants sought to keep a

4   good customer happy, not to become its insurer.  There is no

5   valid reason to extend the "special relationship" status to Britz

6   and Defendants.

7        The motion to dismiss the negligent breach of contract claim

8   is GRANTED WITHOUT LEAVE TO AMEND.

9        Defendants contend Britz's gross negligence cause of action

10  fails to state a claim because it is merely an allegation of

11  punitive damages by stating Defendants

12

13       failed to act with any modicum of diligence or care, and
         Defendants actions constituted a wanton and reckless
         disregard of its obligations to Britz and as a voluntary
14       and conscious disregard for Britz's rights and any
         consequences which were a foreseeable result of
15       Defendant's action or inaction, thereby justifying an
         award of exemplary and punitive damages.  Defendant's
16       conduct was despicable by any standard.

17       Britz rejoins that the language above sufficiently pleads a

18  cause of action for gross neglience.  California tort law

19  recognizes the difference between negligence and gross

20  negligence.  *Santa Barbara v. Superior Court*, 41 Cal. 4th 747

21  (2007).  Gross negligence has long been defined as either "the

22  want of even scant care or an extreme departure from the ordinary

23  standard of conduct."  *Id.* at 754.  "A breach of legal duty may,

24  of course, consist of either ordinary negligence or gross

25  negligence."  *Van Meter v. Bent Constr. Co.*, 46 Cal. 2d 588, 595.

26  Whether a party acted with gross negligence is a question of

27  fact.  *Cooper v. Kellogg*, 2 Cal. 2d 504, 511 (1935) (stating

28  "whether there has been such a lack of care as to constitute

25

1  gross negligence is a question of fact for the determination of
2  the trial court or jury, even where there is no conflict in the
3  evidence if different conclusions upon the subject can rationally
4  be drawn therefrom.").

5      Here, Britz has pleaded a cause of action for gross
6  neglience, albeit marginally, to survive a motion to dismiss.
7  Britz has alleged that Defendants did not act with any modicum of
8  diligence and disregarded its obligations while defending Britz
9  in the Skouti Lawsuit.  The FAC also incorporates by reference
10 all of the facts surrounding Defendants' offer to defend Britz,
11 pay Hoppe's attorney's fees, and provide Rushford as counsel.
12 Gross negligence is another species, an exacerbated form of
13 negligence.  Like negligence, gross negligence still requires an
14 independent duty not arising from contract.  Defendants owed no
15 duty of care to Britz independent of that it assumed under the
16 contract.  Britz cannot state a claim for gross negligence in
17 tort.

18     The motion to dismiss the gross negligence claim is GRANTED
19 WITHOUT LEAVE TO AMEND.

20

21     B.  <u>Whether Britz's FAC States a Claim for Relief for
           Breach of Contract</u>.

22

23     Defendants contend the FAC fails to state a claim for relief
24 for breach of contract.  The FAC alleges the May 14, 2003, letter
25 contains a necessary and implied condition that the Defendants
26 would "adequately" defend Britz in the Skouti Lawsuit.  The FAC
27 also alleges Defendants failed to take adequate measures to
28 ensure Britz received an adequate defense, and Defendants failed

                                26

1    to inform Britz of facts or circumstances indicating it was not
2    receiving an adequate defense.  These allegations, according to
3    Defendants, are insufficient to state a claim for breach of
4    contract.

5         Britz contends that the May 14, 2003, letter constituted an
6    express agreement that Defendants would defend Britz in the
7    Skouti lawsuit.  Incidental and necessary to Defendants'
8    agreement to Defend Britz is an implied condition to do so in a
9    reasonable  manner.  Britz maintains this condition is so obvious
10   and incidental to the agreement, "there was no reason to state
11   the covenant at the time the agreement was entered into."

12        California recognizes "an implied covenant of good faith and
13   fair dealing in every contract . . . ."  *Kransco v. American*
14   *Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000).
15   "Broadly stated, that covenant requires neither party do anything
16   which will deprive the other of the benefits of the agreement.
17   *Belcher Oil Co.*, 11 Cal. 4th at 91.  The covenant imposes a duty
18   on each party to do that which is necessary to accomplish the
19   purpose of the contract.  *Andrews v. Mobil Aire Estates*, 125 Cal.
20   App. 4th 578, 589 (2005).  "To effectuate the intent of the
21   parties, implied covenants will be found if after examining the
22   contract as a whole it is so obvious that the parties had no
23   reason to state the covenant, the implication arises from the
24   language of the agreement, and there is a legal necessity."  *Ben-*
25   *Zivi v. Edmar Co.*, 40 Cal. App. 4th 468, 473 (1995).  While
26   courts have implied covenants in a contract, "such covenants are
27   justified only when they are not inconsistent with some express
28   term of the contract and, in the absence of such implied terms,

27

the contract could not be effectively performed." *Tanner v. Title Ins. & Trust Co.*, 20 Cal. 2d 814, 824 (1942). "Implied terms should never be read to vary express terms." *Carma Developer v. Marathon Dev.*, 2 Cal. 4th 342, 374 (1992).

The parties do not dispute that a defense agreement exists. The controlling terms of the agreement are found in the May 14, 2003, letter from Defendants' outside counsel to Hoppe. The May 14, 2003, letter contains the following contractual terms:

(1) Bayer agrees to defend Britz Fertilizers, Inc. <u>at this time</u>.

(2) Bayer will <u>not pay past attorney's fees or costs</u> in this case.

(3) Bayer will retain Jim Rushford of Rushford & Bonotto in Sacramento, to defend this matter <u>with you</u>.

(4) If <u>there is any evidence</u> in this case of <u>negligence or fault on the part of Britz</u> (whether credible or not), <u>Bayer may at its option</u> withdraw from the defense of this case.

(5) In the event that Bayer withdraws from the case, Britz agrees to waive any conflict and allow attorneys retained by Bayer in this manner to continue to represent Bayer if Bayer is included as a party.

(6) Britz agrees that it will cooperate fully with Bayer in connection with the defense of this case.

(7) Both Bayer and Britz <u>reserve the issue of indemnity</u> until a later date.

(Emphasis added).

The agreement specifically states Bayer will defend Britz "at this time" and will retain Rushford to do so in the Skouti Lawsuit. The parties do not dispute that Defendants paid Hoppe's fees and that Rushford represented Britz for approximately seventeen months and then withdrew from representation several months before the Skouti Lawsuit went to trial. The record does

28

1   not show why Rushford withdrew from its representation of Britz.

2   Term four, above, expressly reserves the right to withdraw from

3   the defense of this case in the event of any negligence by Britz.

4   There is no provision that Bayer was further obligated to provide

5   a defense or counsel to Britz.  Defendants' failure to provide

6   replacement counsel for Britz after Rushford withdrew may or may

7   not have breached terms number one and three in view of the

8   temporal limitation "at this time," which introduces material

9   ambiguity into the extent and length of the defense commitment.

10      There is no allegation of any representation by express

11  language in the May 14, 2003, letter that Defendants had an

12  obligation to "adequately" defend Britz.  Contract terms one and

13  three, above, simply require Defendants to defend Britz "at this

14  time" and to provide Rushford to do so.  Defendants are sellers

15  of agricultural products.  Defendants could only provide a

16  defense to Britz by providing and paying counsel.  The payment of

17  Hoppe's fees (term two) and providing Rushford to assist with

18  Britz's defense (term three) explained how Defendants would

19  defend Britz.  Britz's allegation that Defendants didn't do

20  "enough" to defend Britz is colorably sufficient at the pleading

21  stage to withstand a motion to dismiss the contract claim that

22  Defendants breached their obligation to defend Britz, in view of

23  the manifest ambiguity of the defense agreement.

24      The motion to dismiss the contract claim is DENIED.

25

26      C.   Whether *Britz II* is Duplicative of *Britz I*.

27      Defendants contend *Britz II* should be dismissed because it

28  is duplicative of *Britz I*.  Defendants maintain that Britz has

1 sought to litigate claims arising from a common nucleus of
2 operative fact in two separate cases.  According to Defendants,
3 both *Britz I* and *Britz II* arise from an alleged breach of certain
4 obligations related to the Skouti Lawsuit.  Both cases concern
5 the Defendants' alleged defense and indemnity obligations
6 emanating from the Skouti Lawsuit, and by filing *Britz II*, Britz
7 has in effect "split its claims."

8       Britz contends the claims asserted in the FAC are not
9 duplicative of the claims asserted in the *Britz I* complaint.
10 Britz maintains Defendants fail to understand the key
11 distinctions between the two cases, and that *Britz I* and *Britz II*
12 are based on different duties, which arise from separate
13 agreements, and are based on different "factual nuclei."
14 According to Britz, *Britz I* is based on Defendants' contractual
15 duty to indemnify Britz under an indemnification provision in the
16 Distribution Agreement.  In *Britz II*, however, Britz claims
17 Defendants undertook an express separate duty to defend Britz in
18 the Skouti Lawsuit, and this duty arose out of Moore's May 14,
19 2003, letter.

20       In a recent opinion, the Ninth Circuit succinctly described
21 the analytical framework to determine whether a later-filed
22 complaint should be dismissed as duplicative of an earlier-filed
23 complaint.  *Adams v. California Dep't of Health Servs.*, 487 F.3d
24 684 (9th Cir. 2007).  "Plaintiffs generally have no right to
25 maintain two separate actions involving the same subject matter
26 at the same time in the same court and against the same
27 defendant."  *Id.* (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 70
28 (3d Cir. 1977) (en banc)).  The test for claim preclusion is used

to determine whether a suit is duplicative.  *Adams*, 487 F.3d at
688.  The Supreme Court has stated "the true test of the
sufficiency of a plea of other suit pending in another forum [i]s
the legal efficacy of the first suit, when finally disposed of,
as the thing adjudged, regarding the matters at issue in the
second suit." *Id.* at 689 (citing *United States v. The Haytian
Republic*, 154 U.S. 118, 124 (1894)).  "In the claim-splitting
context, the appropriate inquiry is whether, assuming that the
first suit were already final, the second suit could be precluded
pursuant to claim preclusion."  *Adams*, 487 F.3d at 689.  "The
normal claim preclusion analysis applies and the court must
assess whether the second suit raises issues that should have
been brought in the first."  *Id.*

        In assessing whether the second action is duplicative of the
first, a court "examine[s] whether the causes of action and
relief sought, as well as the parties or privies to the action,
are the same.  *Adams*, 487 F.3d at 689.  "There must be the same
parties, or, at least, such as represent the same interests;
there must be the same rights asserted and the same relief prayed
for; the relief must be founded upon the same facts, and the . .
. essential basis, of the relief sought must be the same."  *Id.*
(citing *The Haytian Republic*, 154 U.S. at 124).  "A suit is
duplicative if the claims, parties, and available relief do not
significantly differ between the two actions."  *Adams*, 487 F.3d
at 689 (citing *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223
(7th Cir. 1993)).

        The Ninth Circuit uses a "transaction test" developed in the
context of claim preclusion to ascertain whether successive

causes of action are the same. *Adams*, 487 F.3d at 689.  "Whether

two events are part of the same transaction or series depends on

whether they are related to the same set of facts and whether

they could conveniently be tried together." *Id.*  The following

four criteria are examined when applying the transaction test:

> (1)   Whether rights or interests established in the prior
>        judgment would be destroyed or impaired by the
>        prosecution of the second action;
>
> (2)   Whether substantially the same evidence is presented in
>        the two actions;
>
> (3)   Whether the two suits involve infringement of the same
>        right; and
>
> (4)   Whether the two suits arise out of the same
>        transactional nucleus of facts.

*Id.*  The last of these criteria is the most important.  *Id.*

(citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202

(9th Cir. 1982)).

     *Britz II* is entirely duplicative of *Britz I*.  It simply adds

an additional claim for a more particularized duty to defend.

The parties are identical in both Britz *I* and *Britz II*.  The

relief sought in both Britz *I* and *Britz II* is almost identical.

Britz seeks damages in both cases to indemnify it for the

$7,596,247 judgment entered against Britz in the Skouti Lawsuit

and any defense costs.  *Britz I* seeks indemnification for the

judgment against it in the Skouti Lawsuit plus punitive damages

for its fraud and false promise claims for relief.  Britz seeks

$10,000,000.00 in damages in *Britz II* for Defendants' negligence

and breach of contract in failing to adequately defend Britz in

the Skouti Lawsuit.  In both cases, Britz is seeking damages to

cover the judgment in the Skouti Lawsuit.

1    A review of the complaint in *Britz I* and the FAC in *Britz II*
2    reveals numerous allegations of identical facts.  Both the
3    complaint and FAC describe Britz's sale of Defendants' chemical
4    Ethrel to Skouti, the damages to Skouti's vineyards, the Skouti
5    Lawsuit where judgment was entered against Britz for $7,596,247
6    for harm to those vineyards, Ferguson's communications that it
7    was Bayer's position that it would defend and indemnify any claim
8    related to its products where Britz acted as a pass-through
9    entity.  Britz's fraud cause of action in *Britz I* alleges
10   Ferguson's representation that Defendants would indemnify Britz
11   was false, and Britz relied on Ferguson's representation that
12   Defendants would defend and indemnify Britz.  The fraud cause of
13   action also alleges Britz would refrain from filing a cross-
14   complaint in the Skouti Lawsuit against Britz.  *Britz II* alleges
15   Britz dismissed a cross-complaint against Defendants after
16   Defendants agreed to defend Britz in the Skouti Lawsuit.  *Britz I*
17   alleges Britz is continuing to incur attorney's fees following
18   judgment in the Skouti Lawsuit.  Under the agreement to defend
19   Britz, which is at issue in *Britz II*, Defendants paid Hoppe's
20   attorney's fees; attorney's fees post-judgment in the Skouti
21   Lawsuit are claimed in *Britz I.*

22   These complaints should be consolidated for all purposes
23   including trial or Britz should be required to plead any
24   supplemental or additional claims for relief and damages in its
25   original complaint.  One trial embracing all of Britz's claims
26   against Defendants for the defense of and any indemnity
27   obligations in the Skouti Lawsuit will serve the interests of
28   justice, promote judicial economy, preserve party and judicial

33

1  resources, and prevent unjustified duplication of evidence and

2  potentially inconsistent results in the second lawsuit concerning

3  the same underlying transactions.  To that end, *Britz II* is

4  consolidated with *Britz I*.  *See Adams*, 487 F.3d at 692

5  (explaining that a district court may dispense with a duplicative

6  complaint by dismissing the later-filed complaint with or without

7  prejudice, by staying or enjoining the later-filed proceeding, or

8  by consolidating the two actions).  Britz shall amend the

9  original complaint to succinctly state all surviving claims and

10 remedies sought.

11

12                    VI.   Conclusion.

13      For the foregoing reasons, Defendants' motion to dismiss is

14 GRANTED in part and DENIED in part as set forth below.

15      (1)  Defendants' motion to dismiss as to Britz's neglience

16           claim is GRANTED WITHOUT LEAVE TO AMEND.

17      (2)  Defendants' motion to dismiss as to Britz's gross

18           neglience claim is GRANTED WITHOUT LEAVE TO AMEND.

19      (3)  Defendants' motion to dismiss Britz's breach of

20           contract claim is DENIED.

21      (4)  Defendants' motion to dismiss as to whether *Britz II* is

22           duplicative of *Britz I* is GRANTED.  Case number

23           1:07-cv-00846-OWW-SMS (*Britz II*) is consolidated for

24           all purposes with *Britz I*.  The complaint shall be

25           restated to allege the surviving claims within twenty

26           (20) days following service of this decision.

27           Defendants shall have fifteen (15) days to answer, if

28           any further response is required to the consolidated

                              34

complaint.

    (5)   Case number 1:07-cv-00846-OWW-SMS (*Britz II*) shall be administratively closed and all pleadings shall hereafter be filed in case number 1:06-cv-00287-OWW-SMS (*Britz I*).

Defendants shall file an order consistent with this memorandum decision within five (5) days following service by the clerk of this decision.

IT IS SO ORDERED.

Dated:   __February 5, 2008__       _____/s/ Oliver W. Wanger_____
                                    UNITED STATES DISTRICT JUDGE