# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRITZ FERTILIZERS, INC., | ) | 1:06cv287 OWW DLB |
| | ) | |
| | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT'S |
| Plaintiff, | ) | MOTION TO COMPEL TESTIMONY AND |
| | ) | PRODUCTION OF DOCUMENTS FROM |
| v. | ) | THEODORE HOPPE |
| | ) | |
| BAYER CORPORATION, et al., | ) | (Document 69) |
| | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Bayer Corporation and Bayer Cropscience, LP (collectively "Bayer") filed the instant motion to compel non-party deponent Theodore Hoppe to provide further testimony and production of documents requested pursuant to a subpoena on October 21, 2008.[1] The matter was heard on November 21, 2008, before the Honorable Dennis L. Beck, United States Magistrate Judge. Eric Sousa appeared on behalf of Plaintiff Britz Fertilizers, Inc. ("Britz"). T. Mark Smith appeared on behalf of Bayer and Theodore Hoppe appeared on his own behalf.

///
///
///
///

---

[1] The motion was originally filed on July 30, 2008, and heard by Magistrate Judge Sandra M. Snyder on August 22, 2008. Judge Snyder recused herself from this action on October 17, 2008, and the pending discovery motions, including this motion, were re-filed and re-set before Magistrate Judge Beck.

1

**BACKGROUND**

*History of Proceeding*

In December 2002, Ahmad Skouti and Walter Johnson filed an action in the Fresno County Superior Court against Britz ("*Skouti*"). The complaint alleged that a "tank mix" containing several agricultural chemicals, including Bayer's product Ethrel, damaged Skouti's raisin crop.

In January 2003, Britz's insurance carrier, Farmland Insurance ("Farmland"), retained Theodore W. Hoppe ("Hoppe") to represent Britz in the action. Pursuant to an indemnity provision in the Distribution Agreement between Britz and Bayer, Hoppe requested that Bayer defend and indemnify Britz in the *Skouti* action. Bayer concluded that it had no duty to do so; however, based on the longstanding relationship, Bayer agreed to assist in the defense. In June 2003, attorney James Rushford ("Rushford") associated in as co-counsel of record for Britz, but withdrew prior to trial.

A jury trial commenced on February 28, 2005. During trial, Britz's CFO Robert Glassman ("Glassman"), who along with Hoppe served as Britz's trial counsel, admitted liability but contested damages. On April 14, 2005, judgment was entered against Britz in the amount of $7,596,247.00, plus costs. Britz has exhausted all appeals and paid the judgment.

On March 14, 2006, Britz filed this action against Bayer seeking indemnity, declaratory relief and damages for fraud, misrepresentation and false promise. Britz filed a separate action on June 8, 2007, alleging that Bayer breached an agreement to adequately defend Britz and that Bayer was negligent in its defense in the *Skouti* action. The negligence claim has been dismissed and the actions have been consolidated. On February 28, 2008, Britz filed an amended complaint, restating the surviving claims for both actions. The amended complaint includes a claim for breach of contract to defend, alleging that Bayer failed "to take adequate measures to ensure that Britz received an adequate defense."

*The Depositions*

The first session of Hoppe's deposition took place on June 27, 2007. He refused to answer certain questions, asserting the attorney-client privilege as it related to Farmland. He also

refused to answer questions about the *Skouti* action, asserting the work product doctrine.  The deposition was not concluded.

On February 22, 2008, Judge Snyder held a hearing on Bayer's motion to compel further testimony from Glassman and David Britz regarding Britz's assertion of the attorney-client privilege regarding communication with Hoppe and Rushford.  The motion was granted, with the Court finding that the attorney-client privilege did not apply and/or was waived because Britz had placed its communications with Hoppe and Rushford at issue by filing the present action.  Bayer also raised the issue of Hoppe's refusal to respond to questions posed at his deposition.  As an advisory ruling, the Court found that the order compelling disclosure also applied to discovery sought from Hoppe.

After this hearing, Bayer subpoenaed Hoppe for a further session of his deposition and requested production of documents.  The second session commenced on May 19, 2008.  Hoppe produced documents prior to the deposition, but withheld others based on the attorney-client privilege as to his relationship with Farmland, as well as the work-product doctrine.  At the deposition, Hoppe maintained these objections and refused to answer certain questions.

The instant motion was filed on August 22, 2008.  Although Judge Snyder heard the motion, there was no ruling.  Judge Snyder recused herself on October 17, 2008, and the motion was re-set before Magistrate Judge Dennis Beck.  The parties filed their joint statement on November 14, 2008.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter."

**A.**     **Attorney-Client Privilege**

During his deposition and in response to some production requests, Hoppe refused to answer based on his attorney-client relationship with Farmland.

3

In diversity cases such as this, privilege law is governed by the law of the state within which the Court sites. Fed.R.Evid. 501. Under California law, absent a waiver, a client, whether or not a party, has a privilege to refuse to disclose a confidential communication between the client and his or her attorney. Cal.Evid.Code § 954. The privilege is absolute and continues beyond the end of the attorney-client relationship.

Generally, an attorney retained by an insurance company to defend an action against its insured represents both the insurance company and the insured, and both members of this tripart relationship are entitled to claim the privilege. Glacier Gen. Assurance Co. v. Superior Court, 95 Cal.App.3d 836, 839 (1979) (citing American Mut. Liab. Ins. Co. v. Superior Court, 38 Cal.App.3d 579, 592 (1974)). "Each of the joint clients holds the privilege protecting their confidential communications with the attorney; one client may not waive the privilege without the consent of the other." Roush v. Seagate Technology, LLC, 150 Cal.App.4th 210, 223 (2007).

There is no dispute that Farmland is a holder of the attorney-client privilege in this tripart relationship between Hoppe and his clients, Britz and Farmland. Thus, the burden shifts to Bayer to establish either (1) the privilege does not apply; (2) an exception exists; or (3) there has been an express or implied waiver. Venture Law Group v Superior Court, 118 Cal.App.4th 96, 102 (2004).

Bayer first argues that because Britz has waived the privilege by filing this action, so too has Farmland. Bayer relies on Judge Snyder's February 2008 ruling, arguing that her ruling applied to Hoppe, as well. However, that ruling was limited to Hoppe's privilege with Britz, and did not impact Hoppe's privilege with Farmland.

Bayer next argues against the privilege by suggesting that Farmland's relationship with Hoppe is "wholly derivative" of Hoppe's relationship with Britz, and therefore no independent relationship exists between Hoppe and Farmland. Bayer believes that Hoppe's assertion of the privilege is nothing more than an attempt to block discovery by hiding behind his relationship with Farmland. Joint Statement, at 8. While it may be true that Hoppe's relationship with Farmland exists because of his relationship with Britz, it does not necessarily follow that a

waiver by one is a waiver by the other. Farmland and Britz are not one in the same, but are joint clients of Hoppe's, and Britz's waiver does not equate to Farmland's waiver.

Britz relies mainly on American Mut. Liab. Ins. Co. v. Superior Court, 38 Cal.App.3d 579 (1974), in support of the application of the privilege. In that action, a medical malpractice insurer sought to prohibit disclosure, in a pending malpractice action, of contents of files worked up by an attorney who had been retained by the insurer to defend an insured in prior malpractice actions. In the underlying action, a medical malpractice plaintiff requested discovery of the attorney files, which included correspondence between the insurer and defense counsel from prior cases involving the defendant physician. The plaintiff contended that the defendant physician had waived the privilege by bringing a bad faith action against the insurer. In analyzing the issue, the Court examined the nature of the tripart relationship and explained that the attorney has two obligations- one to the insured and one to the insurer, and that each relationship is "endowed with confidentiality" and in a sense, "independent of the other." American Mutual, 38 Cal.App.3d at 592. When two members become adversaries and one client has waived the privilege, the attorney cannot waive the privilege for the other client. Id., at 595.

The Court agrees that the general principal espoused in American Mutual is applicable to the facts of this discovery dispute. Like the players in American Mutual, this dispute involves an insured (Britz), an insurer (Farmland) and their attorney (Hoppe). Although this tripart relationship exists outside of the boundaries of this litigation, the legal principal remains applicable. It therefore follows that pursuant to the holding in American Mutual, Britz's waiver does not affect Farmland's assertion of the privilege. Farmland's attorney-client privilege remains intact and cannot be waived by Hoppe.

That Farmland is not a party to this action does not change the result. Indeed, Bayer attempts to distinguish American Mutual partly on this basis by characterizing the holding as applicable only where an insured has brought a bad faith action against the insurer, and the insurer has an ongoing obligation to provide a defense to the insured in other actions. The Court does not find the holding in American Mutual to be so narrow. Specifically, the Court does not read American Mutual as requiring an adversarial relationship between the insured and insurer,

or an ongoing duty to defend. Rather, the holding is based on the nature of the joint client relationship itself:

> The two obligations, one to insured and one to insurer, were both parts of a common, joint plan. Each of these lawyer-client relationships is endowed with confidentiality. Moreover, there is a sense in which each is independent of the other. For it may well be that in the full discharge of his obligation to his client-insurer, the attorney may communicate to the insurer objective evaluations of his client-insured, which are for the consideration only of the client-insurer in permitting it to discharge its duties to the insured under the insurance contract. Similarly there may be confidences indulged by the insured to the attorney which in turn are not intended for the insurer.

American Mutual, 38 Cal.App.3d at 591-592; see also Great American Surplus Lines Ins. Co. v. Ace Oil Co., 120 F.R.D. 533, 537 (E.D.Cal. 1998) (in motion for protective order brought by non-party insurer against insured defendant, citing American Mutual for the proposition that the insured and insurer are joint holders of privilege where attorney engaged by insurer to defend insured.) Rather than narrowing the holding, as Bayer suggests, the adversarial relationship caused by the bad-faith action simply brought the conflict to light and provided an impetus for the Court to decide the issue.

Finally, Bayer argues that even if Farmland and Britz are viewed as joint clients, the policy behind the privilege, i.e., encouraging a client to make a full disclosure to counsel, does not support its enforcement under these circumstances. Bayer contends that over three years have passed since the verdict in the *Skouti* action, the attorney-client relationship between Britz and Farmland is over, and Farmland is not a party to the present litigation. These facts, though, do not change the nature of the attorney-client relationship between Hoppe and Farmland and do not obviate Farmland's privilege.

Accordingly, the Court finds that Hoppe is entitled to assert the attorney-client privilege insofar as it relates to his relationship with Farmland. The privilege has not been waived.

**B.     Work Product Protection**

Bayer also seeks to compel deposition testimony and production of documents to which Hoppe objected based on the work product doctrine. Bayer believes that it has demonstrated good cause for disclosure of the information, which relates to Hoppe's conduct during the *Skouti* trial.

Federal Rule of Civil Procedure 26(b)(3) protects "documents and tangible things that are prepared in anticipation of litigation or for trial or for another party or its representative" from discovery. Such information may be discovered, however, if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." F.R.Civ.Pro. 26(b)(3)(A)(ii). The Ninth Circuit has explained, "the rule permits discovery [of opinion work product] when mental impressions are the pivotal issue in the current litigation and the need for the material is compelling." Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th 1992).

Pursuant to the discussion at the hearing, to the extent that the requested information is protected under the work product doctrine, the Court finds that Bayer has shown a compelling interest in obtaining the identified deposition testimony and requested documents. Joint Statement, pp. 13-23, 28-30. The questions and document requests relate to the core issue in this action- Hoppe's conduct as defense counsel for Britz during the *Skouti* action. The requested information is critical and can only be obtained from Hoppe himself.

However, Hoppe need not produce documents or answer questions relating *solely* to the indemnity issue. Such information relates directly to certain issues in this case where Bayer is an adversary, creating the very situation that the work product privilege is meant to protect. Bayer has not shown a compelling interest to justify disclosure of indemnity work product. To the extent that documents serve a dual purpose as to both the defense of the *Skouti* action and indemnity issues, the document is not wholly protected by the work product doctrine and the defense portion of the document must be produced. For example, if Hoppe has a written analysis of an expert that includes both defense and indemnity information, Hoppe's thoughts as they relate to the defense are not protected by work product and must be produced. To the extent that the analysis includes his thoughts as they relate to the issue of indemnity, such information is protected by the work product doctrine and is not discoverable.

///
///
///

## **ORDER**

Accordingly, Bayer's motion is GRANTED IN PART and DENIED IN PART. Hoppe SHALL provide answers as directed by this order within fifteen (15) days of the date of service of this order.

IT IS SO ORDERED.

Dated: **March 9, 2009**          **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE