# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITZ FERTILIZERS, INC., | ) 1:06cv287 OWW DLB |
| | ) |
| | ) |
| Plaintiff, | ) ORDER DENYING BRITZ'S MOTION TO |
| | ) COMPEL PRODUCTION OF DOCUMENTS |
| | ) AND FURTHER DEPOSITION TESTIMONY |
| v. | ) |
| | ) (Document 56) |
| BAYER CORPORATION, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Britz Fertilizers, Inc., ("Britz") filed the instant motion to compel production of documents and further testimony from James Rushford, or alternatively, a motion for *in camera* review, on August 29, 2008.[1] The matter was heard on January 30, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Roger Schrimp appeared on behalf of Britz. Stephen Clifford and T. Mark Smith appeared on behalf of Bayer Corporation and Bayer Cropscience, Inc. ("Bayer"). Jerome Lerch appeared on behalf of non-party James Rushford.

---

[1] Between the filing of the motion and the hearing date, Magistrate Judge Sandra M. Snyder recused herself and the motion was moved several times.

# **RELEVANT BACKGROUND**

*History of Proceeding*

In December 2002, Ahmad Skouti and Walter Johnson filed an action in the Fresno

County Superior Court against Britz. The complaint alleged that a "tank mix" containing several

agricultural chemicals, including Bayer's product Ethrel, caused damage when applied to

plaintiffs' vineyard .

In January 2003, Britz's insurance carrier, Farmland Insurance ("Farmland"), retained

Theodore W. Hoppe ("Hoppe") to represent Britz in the action. On January 16, 2003, Hoppe

tendered defense of the *Skouti* action to Bayer and requested that Bayer indemnify Britz. After

receiving no response from Bayer, Hoppe filed a cross-complaint in the *Skouti* action against

Bayer on March 7, 2003, requesting declaratory relief and indemnity.

On May 14, 2003, Bayer, through its outside counsel, James L. Moore ("Moore"), wrote a

letter to Hoppe regarding Britz's defense of the *Skouti* action. The letter explained that while

Bayer would retain James Rushford ("Rushford") to defend the action "with [Hoppe]" based on

the longstanding relationship between Britz and Bayer, rather than out of legal obilgation. The

letter further stated that Bayer may withdraw from the defense of the *Skouti* action and that if it

does, "Britz agrees to waive any conflict and allow attorneys retained by Bayer in this matter to

continue to represent Bayer if Bayer is included as a party." Hoppe agreed, and based on the

agreement to defend contained therein, Britz dismissed the cross-complaint on June 3, 2003.

On June 18, 2003, Rushford associated in as co-counsel for Britz. In an October 25,

2004, letter, Moore advised Hoppe that Bayer would continue to pay Hoppe's fees and other

litigation expenses provided that Hoppe sign an agreement that Britz would not assert liability

against Bayer based on its payment of defense costs. The letter also advised that Rushford would

withdraw as counsel, stating that he "has not been actively involved in defending this case, which

has been defended by [Hoppe]." Hoppe signed the letter and returned it to Moore.

On October 25, 2004, Rushford sent a withdrawal of counsel pleading to Hoppe for his

signature. Rushford also stated that as a condition to Bayer's continued payment of Britz's

defense, Hoppe needed to provide him with courtesy copies of all pleadings and discovery.

1   Rushford further indicated that he would represent any Bayer witnesses if they were deposed or

2   called to testify at trial.  The withdrawal was filed with the court on November 22, 2004.  After

3   his withdrawal, Rushford continued to advise Bayer on the courtroom proceedings and other

4   events, including subpoenas directed to Bayer personnel.

5          Britz's CFO Robert Glassman ("Glassman") associated in as co-counsel for Britz and

6   attended the trial with Hoppe.  Trial commenced on February 28, 2005, and at the beginning of

7   Britz's case-in-chief, Glassman admitted liability on behalf of Britz.  On April 14, 2005, the

8   court entered judgment against Britz in the amount of $7,596,247.  Bayer continued to pay

9   Hoppe's fees and other litigation expenses through the appeal.

10         On March 14, 2006, Britz filed this action against Bayer seeking indemnity, declaratory

11  relief and damages for fraud, misrepresentation and false promise.  Britz filed a separate action

12  on June 8, 2007, alleging that Bayer breached an agreement to adequately defend Britz and that

13  Bayer was negligent in its defense of the *Skouti* action.  By order dated February 5, 2008, Judge

14  Wanger dismissed the negligence claim.

15         On February 28, 2008, Britz filed an amended complaint, restating the surviving claims

16  for both actions.  The amended complaint includes a claim for breach of contract to defend,

17  alleging that Bayer failed "to take adequate measures to ensure that Britz received an adequate

18  defense."  The amended complaint also alleges that Bayer agreed to furnish, select and pay for

19  Rushford's legal services.  The amended complaint further alleges that Bayer breached the

20  agreement to defend, in part, by (1) failing to inform Britz of facts suggesting that it was not

21  being adequately defended, as communicated by Rushford to Moore and Ferguson; (2) failing to

22  replace Rushford as co-counsel when he withdrew; and (3) failing to ensure that Britz had

23  adequate trial counsel.

24      *The Rushford Documents*

25         On May 23, 2007, in response to subpoenas issued by Britz to Rushford and his law firm,

26  Rushford produced four banker's boxes of documents, consisting primarily of trial and

27  deposition transcripts, pleadings, correspondence and some discovery from the *Skouti* action.  A

28  letter from Rushford's counsel, Brett Broge, accompanied the production and explained that

                                                  3

Rushford was asserting the attorney-client privilege "as to all documents depicting communications between Mr. Rushford and Bayer representatives, which took place either before Mr. Rushford's association of Britz began on or about June 18, 2003, or after the representation ended on October 25, 2004."

*Rushford's Deposition*

Britz served Rushford with a deposition notice and subpoena on August 10, 2007, indicating that the deposition would continue day-to-day until completed. Exhibit C. Rushford was deposed on October 3, 2007. In response to questions regarding the conversations he had with Bayer regarding the *Skouti* action, Bayer's counsel asserted the attorney-client privilege and Rushford's counsel, Jerome Lerch ("Lerch"), instructed him not to answer. That afternoon, Lerch informed Britz's counsel that he would not permit Rushford's deposition to continue the next day based on Federal Rule of Civil Procedure 30(d). According to Britz, counsel informed Lerch of the parties' "stipulation" regarding a longer deposition, but Lerch continued to refuse.[2]

After the parties met and conferred, Lerch agreed to produce Rushford for an additional four hours, but conditioned the additional time on the resolution of the issues in this motion.

*Hearings on Motions*

At the January 30, 2009, hearing on Britz's motion to compel, the Court explained that Britz was entitled to explore the nature of Bayer's initial retention of Rushford, so that its argument against the attorney-client privilege and crime-fraud exception could be fully briefed. The Court therefore determined that more information relating to Rushford's initial engagement was necessary and ordered (1) Bayer to examine the documents on its privilege log with a view towards what constitutes engagement information, and obtain information from Moore and Ferguson, if any, as to any conversations they had with Rushford regarding his engagement; and (2) Britz to conduct a telephonic deposition of Rushford about this single issue.

On February 17, 2009, the parties submitted their supplemental joint statement addressing the above issues. Britz deposed Rushford on February 9, 2009, and deposed Moore on February

---

[2] There is no evidence of a written stipulation.

1  12, 2009.  Bayer also produced four documents that were previously identified on Rushford's

2  privilege log.

3      The Court held a supplemental hearing on February 24, 2009.

4                                          **DISCUSSION**

5      Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery

6  regarding any matter, not privileged, that is relevant to the claim or defense of any party,

7  including the existence, description, nature, custody, condition, and location of any books,

8  documents, or other tangible things and the identity and location of persons having knowledge of

9  any discoverable matter."

10 **I.      Attorney-Client Privilege**

11         A.      Legal Standard

12          In diversity cases such as this, privilege law is governed by the law of the state within

13 which the Court sites.  Fed.R.Evid. 501.  Under California law, absent a waiver, a client, whether

14 or not a party, has a privilege to refuse to disclose a confidential communication between the

15 client and his or her attorney.  Cal.Evid.Code § 954.  A confidential communication is one made

16 in the course of the attorney-client relationship for the purpose for which the attorney has been

17 retained.  Cal.Evid.Code § 952.  The privilege is absolute and continues beyond the end of the

18 attorney-client relationship.

19         The party asserting the privilege bears the initial burden of demonstrating that the

20 communication falls within the privilege.  Wellpoint Health Networks, Inc. v. Superior Court, 59

21 Cal.App.4th 110, 123 (1997); State Farm Fire & Cas. Co. v. Superior Court, 54 Cal.App.4th 625,

22 639 (1997).  Once an attorney-client relationship has been established, however, communications

23 between attorney and client are presumed to be in confidence, and the party opposing the

24 privilege bears the burden of proving the communication was not in confidence.  Cal. Evid.Code

25 § 917; State Farm Fire & Cas. Co., 54 Cal.App.4th at 639.

26         B.      Discussion

27         By this motion, Britz seeks production of documents and responses to deposition

28 questions relating to the period of time before and after Rushford's joint representation.  The

joint representation lasted from approximately May/June 2003 through October/November 2004.[3] Britz sets forth three main arguments: (1) that Judge Snyder's February 2008 order is applicable to the instant issue; (2) communications both before and after the undisputed joint representation were also part of this undisputed joint representation period; and (3) even if the representation both before and after the undisputed joint representation was a separate representation between Rushford and Bayer and Bayer could assert the attorney-client privilege, the crime-fraud exception applies and should abrogate the privilege.

1.    *Judge Snyder's Order*

On February 22, 2008, Bayer's motion to compel Britz and Glassman to answer certain deposition questions was heard before Judge Snyder. Judge Snyder determined that the attorney-client privilege, if it even existed, was waived between Britz's attorneys (Hoppe and Rushford) and the deponents (Glassman and Britz) by Britz's filing of the instant action and placing the protected information at issue. In so finding, Judge Snyder noted that the attorney-client privilege was waived "carte blanche" and advised that her finding would be equally applicable to any other depositions, including Hoppe's.

Britz believes that Judge Snyder's ruling was not limited to the issue before her, i.e., Britz and Glassman attempting to assert the attorney-client privilege against Bayer. However, contrary to Britz's belief, Judge Snyder's ruling and advisory opinion relating to any other depositions was limited to *Britz's* privilege. The existence and/or waiver of *Bayer's* privilege was not before the Court. Britz is therefore unable to rely on Judge Snyder's ruling to argue that Bayer somehow waived its privilege with Rushford for the periods before and after the undisputed joint representation.

2.    *Establishing the Attorney-Client Relationship*

As the party seeking to assert the privilege, Bayer has the initial burden of showing that the communications at issue fall within the privilege, i.e., that an attorney-client relationship existed and that the communications were made in the course and scope of that relationship.

---

[3] The Court will refer to the time between these dates as the "undisputed joint representation," as there is no dispute that Rushford represented both Britz and Bayer during this time. Documents from this period

1                  a.        Period Prior to Undisputed Joint Representation

2       Pointing to Moore's recent deposition testimony, Bayer contends that he requested

3 Rushford's "assistance in defending Bayer" and that Bayer intended to decline to represent Britz

4 in the *Skouti* action. Indeed, Moore testified that in a January 31, 2003, e-mail to Rushford, he

5 requested his "assistance in defending Bayer," meaning "[t]hat if Bayer was sued he would be

6 one of the attorneys, maybe the only attorney representing Bayer." Feb 12, 2009, Deposition of

7 James L. Moore ("Moore Dep.,"), 9, attached to Supplemental Joint Statement as Exh. QQ.

8 Moore attached a copy of the *Skouti* complaint to the e-mail. Exh. SS, attached to Supplemental

9 Briefing. In his April billing statement, Rushford charged for time spent on February 25, 2003,

10 "review[ing] claim file from Mr. Moore" and engaging in a "phone call with Mr. Moore re

11 Ethrel." Exh. WW, attached to Supplemental Joint Statement. Moore believes that Bayer

12 retained Rushford on January 31, 2003. Moore Dep., 33-34.

13       From these facts, Bayer has established that the communications fell within the scope of

14 the attorney-client privilege. Bayer, through Moore, contacted Rushford in January 2003 by way

15 of an e-mail attaching the *Skouti* complaint and requesting Rushford's assistance in defending the

16 matter. Rushford reviewed the complaint in February 2003. The evidence therefore

17 demonstrates that Bayer and Rushford had an attorney-client relationship prior to the

18 commencement of the undisputed joint representation for the purpose of defending the *Skouti*

19 action, and that their communications were made within the scope of this representation.

20       Britz' contention that Rushford did not represent Bayer prior to the undisputed joint

21 representation because he never made a formal appearance fails. An attorney-client relationship

22 is not dependent on any actual event, but rather depends on the communications between the

23 attorney and client.

24                  b.        Period After Undisputed Joint Representation

25       Based upon the attorney-client relationship between Rushford and Bayer prior to the

26 undisputed joint representation and the notification that Bayer would continue to act on behalf of

27 Bayer after his withdrawal, Bayer has demonstrated an attorney-client relationship for the period

28 after the undisputed joint representation.

c. Joint Representation Before and After Period of Undisputed Joint Representation

Britz urges the Court to find that there was no separate attorney-client relationship between Rushford and Bayer either prior to, of after, Rushford's representation of Britz. Pursuant to section 962 of the California Evidence Code, Britz then reasons that it would be entitled to Rushford's and Bayer's communications both before and after association concerning the *Skouti* action, because the communications related to a matter of common interest and Bayer cannot assert the attorney-client privilege against Britz.[4]

The evidence does not support such a finding. Britz filed a cross-complaint in the *Skouti* action against Bayer. Bayer initially contacted Rushford to represent it, and only it, in the *Skouti* action. At that time, Moore believed that Bayer was going to decline Britz's request to provide a defense. Moore Dep., 11. That Rushford and Bayer may have discussed issues relating to Britz, though relevant to a conflict analysis, does not create an attorney-client relationship between Britz and Rushford.

The same is true of the period after the undisputed joint representation. Moore's October 25, 2004, letter to Hoppe stated in no uncertain terms that "Jim Rushford will withdraw from this case shortly." Exh. X, attached to Joint Statement. The letter from Rushford to Hoppe on the same date also states "our office will be withdrawing from the above matter as co-counsel for Britz Fertilizers, Inc." Exh. Z, attached to Joint Statement. Both letters indicated that Rushford would continue on as counsel for Bayer. Having agreed to this, Britz cannot argue that it had any expectations of continuing representation. Nor is there any evidence that Rushford took any actions on behalf of Britz. Britz points to Rushford's contact of favorable potential witness William Narin shortly before trial. Yet Mr. Narin's belief that Ethrel did not cause the damage to

---

[4] California Evidence Code section 962 provides:

Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest).

1  the vineyard was just as favorable to Bayer's position and was consistent with the withdrawal

2  letters indicating that Rushford would be attending depositions and representing Bayer witnesses.

3  Britz's reliance on City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal.4th

4  839, 847 (2006) and Glacier Gen. Assurance Co. v. Superior Court, 95 Cal.App.3d 836, 840-843

5  (1979) does not change this result. Britz relies on City and County of San Francisco in support

6  of its argument that communications between Rushford and Bayer were substantially related to

7  the joint representation and are presumed to have included confidential information derived from

8  Rushford's representation of Britz. However, City and County of San Francisco was decided in

9  the context of a conflict of interest issue and does not suggest that a joint representation should

10  be found where one does not otherwise exist. Rather, City and County of San Francisco provides

11  a remedy of disqualification in situations where counsel fails to secure informed written consent

12  in representing adversaries of former clients, and the presumptions discussed apply to burdens on

13  the former client in moving to disqualify the attorney. Moreover, even if the principals in City

14  and County of San Francisco could be applied in the joint representation context, it would not

15  likely apply here, where Britz agreed to Rushford's continued representation of Bayer. Again,

16  while this agreement may factor into the conflict issue, it does not create a continuing attorney-

17  client relationship between Rushford and Britz.

18  Similarly, Britz relies on Glacier to support its argument that communications both before

19  and after are the undisputed discoverable because they concerned the handling of Britz's defense

20  and were therefore related to a matter of common interest to both Britz and Bayer. Glacier

21  involved a discovery dispute in a bad faith action brought by the doctor's successor-in-interest

22  against an insurance company for failure to settle a medical malpractice action. The insurance

23  company sought to bar enforcement of an order requiring production of the entire litigation file

24  of the attorney who represented both the insurer and the doctor in the malpractice action. Citing

25  California Evidence Code section 962, the court found that the attorney-client privilege did not

26  protect the file. In so finding, the court further held that when an insurer hires counsel to defend

27  an insured, "any communication with the lawyer concerning the handling of the claim against the

28  insured is necessarily a matter of common interest to both the insured and the insurer."

9

Analogizing Glazier to this case, Britz contends that Bayer retained Rushford to defend Britz and Bayer and therefore acted like an insurer by retaining and paying for counsel. Any communication between Rushford and Bayer about the handling of the action, then, was a matter of common interest. Glazier, however, involves the typical tripart relationship between the insured, the insurer and the attorney hired by the insurer to defend the insured. The relationship at issue in this motion is far from the typical tripart relationship from which a common interest can be assumed. Rushford was initially retained by Moore, who at the time believed that Bayer would not be providing a defense to Britz. Bayer therefore had its own relationship, with its own interests to advance, with Rushford before the undisputed joint representation and, arguably, continuing throughout the joint representation and after.

Bayer eventually agreed to defend Britz based on a "goodwill gesture" and although it paid for the defense, it did not act like a typical insurer. For some time prior to Rushford's representation of Britz, a cross-complaint for declaratory relief and indemnity, filed by Britz, was pending against Bayer in the *Skouti* action. Although it was eventually dismissed, its adversarial nature differentiates the relationship between Bayer and Britz from that of a typical insurer and insured. Moreover, after the cross-complaint was dismissed, Bayer would not have been financially responsible for a judgment, at least during the *Skouti* action, as would have an insurer. The insurer's financial responsibility strengthens the common interest in defeating the claims in a way that was not present during the *Skouti* action. Finally, and perhaps most compelling, Britz, acting through Hope, agreed to Rushford's withdrawal. Certainly, if an insured agreed to the withdrawal of the attorney provided by the insurer, the assumption of a common interest so as to obviate the attorney-client privilege would likely cease.

        3.    *Waiver*

In opposing the motion, Bayer contends that Britz waived any conflict and agreed to the arrangement based on the letters dated May 14, 2003, and October 25, 2004. In the May 14, 2003, letter to Hoppe, Moore explained that Bayer would retain Rushford to defend the matter "with [him]" based on the longstanding relationship between Britz and Bayer. The letter further stated that Bayer may withdraw from the defense of the *Skouti* action and that if it does, "Britz

agrees to waive any conflict and allow attorneys retained by Bayer in this matter to continue to represent Bayer if Bayer is included as a party." Exh. G, attached to Joint Statement. In the October 25, 2004, letter to Hoppe, Moore stated that Rushford would be withdrawing from the case but "may still attend some proceedings and will defend any Bayer witness who testifies at trial or in a deposition." Exh. X, attached to Joint Statement.

While the Court can decide the waiver issue by simply assuming that a potential and/or actual conflict existed, a more in-depth discussion of the conflict issue is beneficial to understanding the complexities of the relationships at issue. Britz suggests that the communications before the undisputed joint representation period demonstrate that an actual conflict existed. Specifically, Britz believes that when Rushford was hired, Moore knew that the *Skouti* plaintiffs were alleging that Britz had negligently recommended an off-label application of Ethrel. For example, in a March 2, 2003, e-mail to Ferguson, Moore states that the off-label application "will put us in a difficult position in defending Britz." Exh. VV, attached to Supplemental Joint Statement. Indeed, negligence on the part of Britz would have nullified the indemnity provision in the Distributor Agreement.

The Court agrees that, at the very least, a potential conflict existed and imposed an ethical duty on Rushford to disclose the conflict and obtain Britz's informed written consent. Ca. R. Prof. Conduct, R. 3-310. While Bayer's and Britz's interests were aligned insofar as they both asserted that Ethrel did not cause the alleged damage, their interests diverged once the possibility of Britz's negligent recommendation arose. Bayer was most interested in ensuring that it was not brought into the *Skouti* action, but Britz had actual claims to defend, including the negligent recommendation claim that, in essence, made them adversaries. Pursuant to Rule 3-310, then, Rushford should have disclosed this potential conflict to Britz and obtained its informed written consent prior to taking the joint representation. To the possible detriment of Britz, he failed to do so.

Turning to the waiver issue, the Court finds that Britz did not waive any potential or actual conflict. Upon receiving the May 14, 2003, letter, Britz was not aware of the potential conflict that arose from Rushford's prior representation of Bayer. Although the letter states that

11

1    if Bayer withdraws from the defense, "Britz agrees to waive any conflict and allow attorneys

2    retained by Bayer in this matter to continue to represent Bayer if Bayer is included as a party,"

3    the waiver in no way relates to Rushford's prior representation of Bayer. Similarly, Britz could

4    not make an informed decision as to Rushford's continued representation because it was unaware

5    of his *previous* representation.

6        Although it is clear that there was no waiver of any conflict of interest, it does not follow

7    that the remedy is the abrogation of Bayer's attorney-client privilege. Although Britz argues for

8    this result, it has not provided, nor has the Court found, any authority to support such a remedy

9    under these circumstances. Instead, conflict of interest jurisprudence provides for

10    disqualification and/or professional malpractice actions as remedies. The attorney-client

11    privilege belongs to Bayer and only Bayer can waive it. Cal. Evid. Code § 953.

12        Although the Court denied Britz's requested remedy, it in no way condones Bayer's

13    and/or Rushford's actions. The evidence suggests that while Bayer provided Britz with a

14    defense, it may have done so primarily to safeguard its own interests by ensuring that it was not

15    brought into the *Skouti* action. Of course, Bayer did not disclose information relating to

16    Rushford's prior relationship with it and therefore failed to get Britz's informed consent. Further

17    complicating the issues and the parties' relationship was the complete lack of *any* clearly defined

18    parameters of Rushford's engagement and representation. Such information may have put Britz

19    on notice when its interests began to diverge from those of Bayer.

20        4.    *Crime-Fraud Exception*

21        As an alternate theory to obtain the discovery at issue, Britz argues that even if Bayer can

22    assert the privilege, the privilege should be abrogated pursuant to Cal. Evid. Code section 956.[5]

23    To invoke section 956, a party must establish a prima facie case of fraud, as well as a reasonable

24    relationship between the crime or fraud and the attorney-client communication. A prima facie

25

26    [5] Cal. Evid. Code section 956 provides as follows:

27    There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid
   anyone to commit or plan to commit a crime or a fraud.

28

1 case under 956 is made where the proponent of the exception demonstrates sufficient evidence

2 from which reasonable inferences can be drawn to show that the fraud has some foundation in

3 fact. State Comp. Ins. Fund v. Superior Court, 91 Cal.App.4th 1080, 1090-1091 (2001).

4       Britz's crime-fraud exception argument focuses on what it believes to be the "real

5 purpose" behind Rushford's joint representation- to monitor *Skouti* from the inside so it could

6 avoid being named in the action, rather than assisting in Britz's defense. Brtiz contends that

7 Bayer and Rushford knowingly misrepresented the association by (1) failing to disclose the

8 potential conflict; and (2) focusing on ways to safeguard Bayer from potential liability instead of

9 providing an adequate defense for Britz. Britz contends that these misrepresentations were made

10 with the intent to deceive Britz into dismissing its cross-complaint, which it did, and in deceiving

11 Britz into believing that its defense was adequate so that Rushford could maintain control over

12 the litigation. Britz argues that the documents it seeks contain valuable information regarding

13 Bayer's true purpose in retaining Rushford, his reasons for withdrawing and his interpretation of

14 Bayer's indemnity obligations. These issues, according to Britz, are relevant to its breach of

15 contract claim.

16       The Court finds that Britz has failed establish a prima facie case of fraud. Although a

17 potential conflict of interest existed, insufficient evidence exists to support a finding that Bayer

18 consulted Rushford for the purpose of, or to aid in, the commission of a fraud. At a basic level,

19 both parties wanted to defeat the claim that Ethrel caused the damage alleged in *Skouti*. Their

20 interests diverged, however, and created the potential for conflict, when the issue of negligent

21 recommendation arose. If proven, Britz's negligence in recommending an off-label use of Ethrel

22 would have nullified the indemnity provision in the distributor agreement between the parties.

23 Nonetheless, defending the action by asserting that Britz was negligent was Bayer's alternate

24 defense theory if the initial assertion that Ethrel did not cause the damage failed. Again, although

25 this is certainly a potential conflict of interest, it does not constitute fraud. Rather, arguing that

26 Britz was negligent was simply a back-up defense theory. Had Bayer been brought into the

27 *Skouti* action and asserted that Britz was negligent in its recommendation, it may have

28 invalidated the indemnity provision but it would not have constituted a fraud.

1  Accordingly, Britz cannot rely on section 956 to abrogate Bayer's attorney-client

2  privilege.  The Court further finds that an *in camera* review is not warranted because the facts

3  before the Court do not lead to a reasonable belief that such review may lead to evidence that the

4  exception applies.  In re Grand Jury Investigation, 974 F.2d 1068 (9th Cir. 1992).

5  **II.    Work Product Doctrine**

6      Relying on the crime-fraud exception, Britz also contends that Rushford cannot assert the

7  work product doctrine to shield certain documents created after Rushford's withdrawal from

8  discovery.  For the same reasons that the crime-fraud exception does not abrogate Bayer's

9  attorney-client privilege, it does not warrant an exception to the work product doctrine.

10  **III.    Length of Deposition**

11      Finally, to the extent any disagreements remain over the length of Rushford's deposition,

12  the Court's ruling herein should minimize objections and focus the parties' questioning.  Bayer

13  requests that the further deposition be limited to four hours, and if all issues can be fully explored

14  after that amount of time, four hours would be sufficient.  However, if all issues have not been

15  fully explored within that time frame, Bayer should, in good faith, agree to additional time.

16                                        **ORDER**

17      Based on the above, Britz's motion to compel based is DENIED.  As to the length of

18  Rushford's deposition, Bayer is ORDERED to submit to additional time, if necessary to fully

19  explore discoverable issues.

20

21      IT IS SO ORDERED.

22      **Dated:    May 4, 2009**                         **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28